**Carl SHINAULT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–9512–CR–488.

Court of Appeals of Indiana.

July 5, 1996.

Timothy J. Burns, Indianapolis, for appellant.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant-Appellant Carl Shinault (Shinault) appeals from his conviction for possession of marijuana, a Class D felony.[1]

We affirm.

### ISSUES [2]

One issue is dispositive of this appeal: Whether the trial court erred in denying

---

1. Ind.Code 35–48–4–11 (1993).

2. Shinault raises a challenge to the sufficiency of the evidence, but asks us to reach that issue only if we find in his favor regarding the suppression of evidence. Because we hold that the evidence was properly admitted, we need not reach the sufficiency issue.

Shinault's motion to suppress evidence because the police officer's "patdown" search and subsequent seizure of marijuana exceeded the scope of a valid investigatory stop.

### FACTS AND PROCEDURAL HISTORY

During the early evening hours of March 6, 1995, I.P.D. officer Steven Fitzpatrick was patrolling in his marked police vehicle near the 1100 block of South Meridian Street in downtown Indianapolis. In the alley west of 1100 South Meridian, Officer Fitzpatrick observed Shinault standing face to face with a man named Kennedy. The two appeared to be "involved in a transaction." (R. 42). Officer Fitzpatrick turned into the alley and when Shinault and Kennedy saw the patrol car, they immediately parted company and began walking briskly in opposite directions. Officer Fitzpatrick decided to follow Shinault because he was the closest to him. Shinault headed south toward Kansas Street, and Officer Fitzpatrick pursued him. As Officer Fitzpatrick drove alongside Shinault, he observed Shinault put his hands in his jacket.

At this point, Officer Fitzpatrick got out of his patrol car and told Shinault to remove his hands from his large front jacket pocket. As Shinault took his hands out of his pocket, Officer Fitzpatrick observed a "bulge" protruding from his jacket. Officer Fitzpatrick asked Shinault to approach him, and as he did Officer Fitzpatrick detected the strong odor of marijuana. Officer Fitzpatrick then conducted a patdown search of Shinault which produced a bag containing over 50 grams of marijuana. Shinault was arrested on the scene.

On March 7, 1995, Shinault was charged by information with one count of dealing marijuana in an amount greater than 30 grams, a Class D felony[3]; and one count of possessing marijuana in an amount greater than 30 grams. Following a bench trial, Shinault was convicted only of the possession of marijuana charge. He now appeals.

### DISCUSSION AND DECISION

Shinault contends that the trial court erred when it denied his motion to suppress. Spe-

cifically, he argues that reasonable suspicion did not exist to justify his stop, and even if it did, Officer Fitzpatrick's search exceeded the scope of a valid *Terry*[4] frisk.

■ Prior to trial, Shinault filed a motion to suppress the evidence Officer Fitzpatrick obtained as a result of his search. Following a suppression hearing, the trial court denied Shinault's motion. The trial court has broad discretion in ruling on the admissibility of evidence. We will not disturb its decision absent a showing of abuse of that discretion.

■ The Fourth Amendment to the United States Constitution and Article I, section 11 of the Indiana Constitution guarantee "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable [search and seizure]...." Generally, a judicially issued search warrant is a condition precedent to a lawful search. Searches and seizures conducted outside of the judicial process are *per se* unreasonable under the Fourth Amendment. However, there are a few well-delineated exceptions to this general rule. *Thompson v. Louisiana,* 469 U.S. 17, 19–20, 105 S.Ct. 409, 410–11, 83 L.Ed.2d 246 (1984); *Fair v. State,* 627 N.E.2d 427, 430 (Ind.1993). The burden of proof is on the State to prove that the search was conducted within one of the exceptions to the warrant requirement. *Chimel v. California,* 395 U.S. 752, 774, 89 S.Ct. 2034, 2046, 23 L.Ed.2d 685 (1969); *Rabadi v. State,* 541 N.E.2d 271, 274 (Ind.1989). One exception is the *Terry* investigatory stop and frisk.

### I. *Terry* Stop and Frisk Exception

Shinault contends that Officer Fitzpatrick did not have reasonable suspicion to justify the stop. Specifically, he argues that two men standing close together in an alley certainly does not amount to "reasonable suspicion" within the meaning of *Terry*. Even assuming the initial stop was justified, Shinault contends that the subsequent patdown search and seizure were unconstitutional.

#### A. The "Stop"

■ One exception to the warrant requirement is an investigatory stop whereby a police officer can stop and briefly detain a

---

3. Ind.Code 35–48–4–10 (1995 Supp.).

4. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity "may be afoot," even if the officer lacks probable cause. *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884. The investigatory stop exception provides a means by which police officers can make a valid stop on something less than probable cause. However, it remains a relatively narrow exception to the search warrant requirement and cannot be used to provide a haven for unjustified stops. *C.D.T. v. State*, 653 N.E.2d 1041, 1044 (Ind.Ct.App. 1995). If the facts known by the police officer at the time of the stop are such that a man of reasonable caution would believe that the action taken was appropriate, the Fourth Amendment is satisfied. *Bratcher v. State*, 661 N.E.2d 828, 831 (Ind.Ct.App.1996).

At the suppression hearing, when asked what made him say that Shinault was involved in a transaction, Officer Fitzpatrick responded that "Mr. Shinault's hands were up between his body and Mr. Kennedy's, and so was Mr. Kennedy's hand. . . . I could not actually see anything in their hands, but they were involved in some type of transaction." (R. 42–43). Officer Fitzpatrick further testified that he had been in the general area for six years, and he knew the area of the alley to be a high narcotics traffic area; that when Shinault saw the patrol car, he immediately started to leave the area and walk away from Kennedy; and Officer Fitzpatrick also knew Kennedy to be involved in illegal activity. Under the totality of the circumstances, Officer Fitzpatrick was justified in stopping Shinault to determine if he was engaged in criminal activity.

### B. The "Frisk"

When a police officer makes a *Terry* stop, if he has a reasonable fear of danger, he may conduct a carefully limited search of the outer clothing of the suspect in an attempt to discover weapons which might be used to assault him. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.

Officer Fitzpatrick testified that as he pulled up alongside Shinault, "[Shinault's] hands were down by his side, and as soon as my car started to pass his body, he immediately took both hands and put [them] into his jacket." (R. 45). Officer Fitzpatrick continued by explaining that he has frequently encountered people in that neighborhood who were armed, so for his own safety, he told Shinault to take his hands out of his jacket pocket. When Shinault took his hands out of his pocket, Officer Fitzpatrick noticed a very large and obvious cylindrical shaped bulge in his pocket.

Based on these undisputed facts, Officer Fitzpatrick was justified in conducting a limited patdown search for his own safety and the safety of others in the area. However, the dispositive issue is whether the search exceeded the scope of that permitted by *Terry*. The purpose of a *Terry* search is not to discover evidence of crime, but rather to allow the officer to pursue his investigation without fear of violence. *Id.* at 29–30, 88 S.Ct. at 1884–85. As such, the *Terry* search should be confined to its protective purpose. *Id.* at 27, 88 S.Ct. at 1883. The *Terry* frisk is a "patdown" of outer garments for concealed weapons strictly. If the officer finds something that feels like a weapon, he can reach inside the clothing and check to see if it is a weapon. *Id.* at 29–30, 88 S.Ct. at 1884–85. The State contends and we agree that the "plain-feel" doctrine is controlling in this case.

### II. The "Plain Feel" Doctrine

In *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the United States Supreme Court held that police officers may seize non-threatening contraband detected during a protective patdown search of the sort permitted by *Terry*, so long as the search stays within the confines of a valid *Terry* search:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contours or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Id.* at 375–76, 113 S.Ct. at 2137.

In *Dickerson*, the Supreme Court held that "the officer's continued exploration of respon-

dent's pocket *after* having concluded that it contained no weapon was unrelated to '[t]he sole justification of the search [under *Terry* ] ... the protection of the police officer and others nearby.'" *Id.* at 378, 113 S.Ct. at 2139. (emphasis added). Quoting the Minnesota Supreme Court, the Court noted:

> [A]fter a close examination of the record, [the court] held that the officer's own testimony "belies any notion that he 'immediately'" recognized the lump as crack cocaine.... Rather, the court concluded, the officer determined that the lump was contraband only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket"—a pocket which the officer already knew contained no weapon.

*Id.* at 378, 113 S.Ct. at 2138. (citations omitted).

Here, Officer Fitzpatrick's discovery of marijuana was contemporaneous with his patdown search for weapons. He testified that he observed a cylindrical shaped bulge in Shinault's pocket; that he did not know what it was; that he suspected it could be "a bag of pot," but also realized it could be "a hundred different things" (R. 52–53); that it felt like plastic, but because of its shape, he thought it could be a weapon. When questioned by the court, Fitzpatrick said that he was not sure that the object was not a weapon until he pulled it out of Shinault's pocket.

Shinault cites *C.D.T. v. State,* 653 N.E.2d 1041, 1047, in which we held that the police officer overstepped the bounds of a permissible *Terry* patdown search for weapons by continuing his search of C.D.T. after ascertaining that the defendant did not possess any weapons, and when the incriminating character of the object (a plastic bag containing cocaine) was not immediately apparent to the officer. *C.D.T.* and *Dickerson* are distinguishable from the case before us. Here, although the incriminating character of the

object was not immediately apparent to Officer Fitzpatrick, he had not dispelled the fear that the object was not a weapon at the time he seized it.

Because Officer Fitzpatrick was unable to immediately eliminate the possibility that the tightly rolled plastic bag of marijuana was not some sort of dangerous weapon at the time of the seizure, we hold that Officer Fitzpatrick's seizure of the marijuana was permissible under *Terry.* *Cf. Bratcher v. State,* 661 N.E.2d 828; *Walker v. State,* 661 N.E.2d 869 (Ind.Ct.App.1996), *trans. denied; Parker v. State,* 662 N.E.2d 994 (Ind.Ct.App. 1996) (In these three cases, the seizures did not offend *Terry* or the *Dickerson/C.D.T.* line of cases, because the incriminating character of the object seized was immediately apparent, occurred contemporaneous with the weapons search, and the officers did not continue to manipulate the object after concluding that it was not a weapon); *But see Parker,* 662 N.E.2d at 1000–1001, Sullivan, J., dissenting (would decline to follow *Bratcher,* and finds *Dickerson/C.D.T.* controlling where officer felt object, which the officer immediately knew was not a weapon, yet continued to search for cocaine and removed the packet from the defendant's pocket). While in the case before us, we cannot say with certainty that the incriminating character of the object was immediately apparent to Officer Fitzpatrick, we can and do hold that Officer Fitzpatrick had not dispelled the fear that the object was not a weapon. It is for this reason that we hold the seizure valid.[5]

### CONCLUSION

Accordingly, we affirm the trial court's denial of Shinault's motion to suppress.

Affirmed.

DARDEN and FRIEDLANDER, JJ., concur.

---

**5.** We note that because Officer Fitzpatrick detected the strong odor of marijuana coming from Shinault's person, there is also the possibility that probable cause then arose to justify an arrest and full search incident thereto. *See C.D.T.,* 653 N.E.2d at 1047, n. 4. Officer Fitzpatrick testified

that he suspected the bulge that he felt to be marijuana after he detected the strong odor of marijuana emanating from Shinault's person. However, because we hold that the search did not exceed the scope of a limited patdown search, we need not reach this issue.