**Carmen GRANADOS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 71A03–0011–CR–421.

Court of Appeals of Indiana.

May 24, 2001.

Transfer Denied August 23, 2001.

Edward C. Hilgendorf, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, James A. Joven, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Judge.

### Case Summary

Appellant-defendant Carmen Granados ("Granados") appeals his conviction for possession of cocaine [1] as a Class D felony. We reverse.

---

1. *See* Ind.Code § 35–48–4–6.

## Issue

Granados raises one issue for review: whether the trial court erred in denying his motion to suppress.

## Facts and Procedural History [2]

The facts most favorable to the conviction indicate that at approximately midnight on August 18, 1999, Corporal Aaron Cassel ("Cassel") of the South Bend Police Department responded to a report that someone was "blowing things up" at the Belleville Baseball Complex in South Bend, Indiana. When Cassel arrived at the park, he saw three other police officers approaching a man and a woman standing by the trunk of a vehicle in the parking lot, which was unilluminated except for the police vehicles' spotlights. One of the officers noticed two males slouching in the back seat of the vehicle. The officers removed the two men, one of whom was Granados, from the car and searched all four persons for weapons to ensure officer safety.

Cassel placed Granados' hands on the trunk of the vehicle and conducted a pat-down search of his outer clothing. Cassel ran his hands over Granados' shoulders, ribs, and waist. Cassel patted down Granados' left leg and began to pat down his right leg below the knee when Granados attempted to turn around. Cassel ordered Granados to face forward and continued to pat down his leg. As Cassel moved closer to Granados' ankle, Granados again attempted to spin around. Cassel then forcefully put Granados' head on the back of the vehicle, told him "not to move anymore," and continued to search his right leg. Cassel felt a hard object just above Granados' ankle inside his sock. Granados kicked his leg as Cassel opened the sock, and a folded five-dollar bill fell to the ground. When Cassel picked up the bill, "[f]olded maybe in a quarter of its normal size," Granados said, "That's not my five-dollar bill. That's not my sock. I don't know nothing about this." Cassel opened up the folded bill and found a white powdery substance later determined to be cocaine. Cassel then searched Granados' shoe and insole and found nothing.

On August 19, 1999, the State charged Granados with possession of cocaine as a Class D felony. On April 6, 2000, Granados orally waived his right to a jury trial and stipulated that the substance found during Cassel's search of his person was cocaine. The trial court then heard testimony and argument on Granados' motion to suppress.[3] On May 24, 2000, the trial court found Granados guilty as charged.

---

2. We heard oral argument in this case on May 1, 2001, at LaPorte High School in LaPorte, Indiana. We extend our appreciation to the faculty, staff, and students of LaPorte High School for hosting the argument, to the LaPorte City Bar Association for their interest and involvement, and to counsel for the quality of their preparation and oral presentations.

3. Although the trial court noted that Granados filed a motion to suppress, the motion itself does not appear in the record. However, the substance of Granados' motion can be gleaned from defense counsel's comments at the conclusion of the hearing:

> I understand that [Cassel] is given a certain amount of leeway in these matters. It's clear that this pat-down was reasonable under the circumstances, but there wasn't any imminence [sic] whatsoever to show that at any time there was any suspicion that there was any weapon to be found here.
> . . .
> The pat-down was reasonable. [Cassel] reached into the sock and what he found was a five-dollar bill. No indication that there was anything other than a five-dollar bill, which at that point was not contraband, not illegal.
> It's only when he went further to open it up, unfold it, that our position is and because of all of this, we think this is purely a legal question since all the facts have already been stipulated to. That's the reason

### Discussion and Decision

 "The admissibility of evidence is within the sound discretion of the trial court." *Johnson v. State*, 710 N.E.2d 925, 927 (Ind.Ct.App.1999). We will not disturb its decision absent a showing of an abuse of this discretion. *See id.* In reviewing a trial court's ruling on a motion to suppress evidence, we examine the evidence most favorable to the ruling, together with any uncontradicted evidence. *Id.* We neither reweigh evidence nor judge witness credibility. *Id.*

██ The Fourth Amendment's protection against unreasonable search and seizure has been extended to the states through the Fourteenth Amendment. *See Berry v. State*, 704 N.E.2d 462, 464–65 (Ind.1998). "As a general rule, the Fourth Amendment prohibits a warrantless search. When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." *Id.* at 465 (citations omitted). One exception to the warrant requirement was recognized by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See Jackson v. State*, 669 N.E.2d 744, 747 (Ind. Ct.App.1996). In *Terry*, the Supreme Court held that " 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot' the officer may briefly stop the suspicious person and make 'reasonable inquiries' to confirm or dispel those suspicions." *Id.* (quoting *Terry*, 392 U.S. at 30, 88 S.Ct. 1868).

██ If a police officer has a reasonable fear of danger when making a *Terry* stop, he may conduct a carefully limited search of the suspect's outer clothing in an attempt to discover weapons that might be used to assault him. *Shinault v. State*, 668 N.E.2d 274, 277 (Ind.Ct.App.1996). "The purpose of a *Terry* search is not to discover evidence of crime, but rather to allow the officer to pursue his investigation without fear of violence. As such, the *Terry* search should be confined to its protective purpose." *Id.* (citation omitted). The officer need not be absolutely certain that the suspect is armed; "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S.Ct. 1868. In determining whether the officer acted reasonably under the circumstances, "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.*

██ Our inquiry regarding the reasonableness of the stop and search focuses on "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *See id.* at 19–20, 88 S.Ct. 1868. Granados concedes that Cassel was justified in conducting a *Terry* stop and search, but argues that "Cassel had no authority to go into [his] sock, and further had no authority to open the five-dollar bill once he had gone into [his] sock." We address each contention in turn.

 If an officer finds something that feels like a weapon during a *Terry*

---

we waived the jury and submitted it to the Court.

Thus, it appears that Granados challenged only the propriety of Cassel's removal of the folded five-dollar bill from Granados' sock and the subsequent opening of the bill and not the propriety of the investigatory stop and patdown search.

search, he can reach inside the clothing and check to see if it is a weapon. *See C.D.T. v. State,* 653 N.E.2d 1041, 1045 (Ind.Ct.App.1995) (citing *Terry,* 392 U.S. at 29–30, 88 S.Ct. 1868 (police officer "did not place his hands in [suspects Terry's and Chilton's] pockets until he had felt weapons, and then he merely reached for and removed the guns. He never did invade Katz' person beyond the outer surfaces of his clothes, since he discovered nothing in his patdown which might have been a weapon.")). Contrary to the State's assertion, Cassel did not state that the hard object in Granados' sock felt like a weapon;[4] instead, Cassel testified that he "started to reach to open the sock to make sure there was no weapons, you know, *to see what it was,* you know, to make sure there was no weapons or anything concealed in the sock" (emphasis added). In fact, only *after* the bill fell out of Granados' sock did Cassel become concerned that it might contain needles or razor blades. Thus, Cassel's removal of the five-dollar bill from Granados' sock exceeded the protective scope of the *Terry* search in violation of the Fourth Amendment.

 Cassel's subsequent search of the folded bill was similarly illegal. Viewing the facts most favorable to the conviction, Cassel testified that "something" the size of the bill could "contain needles, razor blades. I mean it could have weapons. [Granados] was obviously getting very nervous for a reason. I wanted to eliminate that for a reason just as protocol to make sure that there wasn't something I would have missed."[5] In *Berry,* our supreme court held,

> We believe that the reasonable suspicion that gives authority to a *Terry* stop *does not, without more, authorize the examination of the contents of items carried by the suspicious person.* But where either the suspicion that criminal activity may be afoot or a concern over the possibility of harm is reasonably heightened during the stop, the police are authorized to search such items within the suspicious person's immediate control.

704 N.E.2d at 466 (emphasis added). In *Berry,* a sheriff's deputy heard a metallic-sounding clunk as she placed the suspicious[6] defendant's "very heavy" backpack on her patrol car. *Id.* at 465–66. The deputy searched both the defendant and the backpack for officer protection and

---

**4.** The State contends that "[u]pon feeling the hard object hidden at [Granados'] ankle, Corporal Cassel tried to determine if the object was a small, bladed weapon, such as a knife, needle, or razor blade." When the State asked Cassel whether it would have been unusual for him to find any weapons around Granados' ankle, he responded that "[p]eople stick" knives and other weapons in their socks; however, he did not testify that he thought the hard object in Granados' sock might have been a weapon of any kind.

**5.** Cassel had previously testified that when he first saw that the object that fell out of Granados' sock was a five-dollar bill, he thought that "[i]t was just a five-dollar bill." Cassel subsequently testified, "Because if [Granados] did have a weapon, I wanted to find it, and so I kind of picked up the pace a little bit be-cause at first glance it was just a five-dollar bill, and so you know, it could have *anything* in it." (Emphasis added.) Cassel also stated, "Because the first thing [Granados] said was it's a five-dollar bill, so I opened it just to confirm what he was saying and make sure he wasn't lying. You know, that it could be a weapon or something."

**6.** In *Berry,* "[f]ollowing a report of a person picking through the trash cans at a grocery store, a town police officer discovered defendant sleeping under some bushes." 704 N.E.2d at 465. The defendant "was unable to produce a driver's license and the name and address defendant gave the officer did not check out." *Id.* Also, police were unable to locate a motorcycle that defendant claimed he had crashed on the outskirts of town. *Id.*

found a handgun and ammunition in the backpack. *Id.* at 466. The *Berry* court upheld the search and the trial court's denial of defendant's motion to suppress.

The facts of this case compel a different result. Here, Cassel and three officers responded to a call that someone was "blowing things up" in a city park. The officers found Granados and his three companions in the parking lot, stopped them to investigate, and patted them down for officer safety. Granados kicked his leg as Cassel attempted to recover an unidentified hard object from his sock, and a folded five-dollar bill fell to the ground. Cassel did not suspect that the bill might contain highly combustible powder that might have been the cause of the reported explosions; instead, he became concerned that the bill might contain needles or razor blades. While we acknowledge the serious safety risks that sharp objects can pose to investigating officers during an arrest or a *Terry* stop and search, we cannot conclude that a suspected needle or razor blade folded securely in a five-dollar bill out of Granados' immediate reach created a reasonably heightened possibility of harm under the circumstances.

Neither can we conclude that Granados' nervousness reasonably heightened Cassel's suspicion that criminal activity was afoot. Cassel testified,

> So to make sure—being [Granados] started getting squirrelly, to make sure there were no weapons or anything, *just out of habit,* I opened [the five-dollar bill] up to make sure—to eliminate that as being the source of why he's being so nervous, so I can concentrate, you know, whether it be his shoes or maybe something concealed in his shoes, I opened it up and that's when I found the white powdery substance.

(Emphasis added.) Cassel did not claim that Granados' nervousness caused him to suspect that any criminal activity was afoot. Rather, Cassel simply unfolded the bill "out of habit" to determine if it contained any "weapons *or anything.*" *Cf. Terry,* 392 U.S. at 30, 88 S.Ct. 1868 (police officer "confined his search strictly to what was minimally necessary to learn whether the men were armed and to disarm them once he discovered the weapons. He did not conduct a general exploratory search for whatever evidence of criminal activity he might find.").

Once the five-dollar bill fell to the ground, Cassel could have simply covered the bill with his shoe or kicked it out of reach and completed his patdown search of Granados without fear of being injured by any weapons it might have contained. *See Berry,* 704 N.E.2d at 465 ("As commentators have noted, police officers can often protect themselves from any risk that the item might contain a weapon by simply putting it out of the person's reach."). By unfolding the bill to look for "weapons or anything," Cassel broadened the scope of the *Terry* search beyond its protective purpose. *See Johnson,* 710 N.E.2d at 928; *see also Terry,* 392 U.S. at 25–26, 88 S.Ct. 1868 ("A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation."); *Ybarra v. Illinois,* 444 U.S. 85, 93–94, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) ("Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or indeed, any search whatever for anything but weapons."). For the above reasons, we conclude that the trial court erred in denying Granados' motion to suppress and reverse his conviction for cocaine pos-

session.[7]

Reversed.

RILEY, J., and VAIDIK, J., concur.

7. In a post-briefing submission of additional authority and at oral argument, the State asserted that Cassel was justified in searching the five-dollar bill because Granados had abandoned it.

> Police need not obtain a warrant in order to lawfully seize abandoned property. The question of whether property has been abandoned is one of intent. Intent in such cases can be ascertained from words, acts, and other objective facts. We will find that an object has been abandoned where it appears the defendant has relinquished all interest in the property.

*State v. Belcher*, 725 N.E.2d 92, 95–96 (Ind. Ct.App.2000), *trans. denied*. In *Belcher*, the defendant was held to have abandoned the gun and magazine at issue by dropping them "onto the curb of a public street as he ran from the police officers, and before he was seized." *Id.* at 96. In the case at bar, the five-dollar bill fell from Granados' sock after Cassel seized him and during a protective patdown search. However, we need not reach the question of abandonment here: "Abandoned property is not admissible into evidence if the abandonment was precipitated by illegal police conduct or the threat thereof." *Miller v. State*, 498 N.E.2d 53, 56 (Ind. Ct.App.1986), *trans. denied* (1987). We have already determined that Cassel's removal of the bill from Granados' sock was illegal. Thus, even if we were to determine that Granados abandoned the bill, the cocaine would not be admissible because the abandonment was precipitated by Cassel's illegal removal of the bill from Granados' sock.