James **CLENNA**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 49A02–0206–CR–481.

Court of Appeals of Indiana.

Feb. 7, 2003.

Barbara J. Simmons, Batesville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

MATHIAS, Judge.

James Clenna ("Clenna") was found guilty of reckless possession of paraphernalia,[1] as a Class A misdemeanor, after a bench trial in Marion Superior Court. He appeals, raising three issues, which we consolidate and restate as:

I. Whether the investigatory stop and patdown of Clenna violate the Fourth Amendment or Article I, Section 11 of the Indiana Constitution; and

II. Whether the trial court properly imposed fines and costs.

We affirm.

### Facts and Procedural History

On October 27, 2001, Officer Charles Wheelar ("Officer Wheelar") of the Indianapolis Police Department responded to a report of suspicious people inside of a drug store. This drug store was familiar to Officer Wheelar because he had been dispatched there for prior reports of shoplifting and robberies. Tr. p. 11. On this date, a clerk at the drug store told the police that there were two black males in the store acting suspiciously, and the clerk was afraid that they were going to rob the store. Tr. p. 6. The clerk reported that the men had been in the store for over thirty minutes, that they had made several advances toward the cash register, and the men would retreat to the back of the store when other people came into the store. Tr. pp. 6–7.

When Officer Wheelar arrived at the store, the clerk pointed to the aisle where the men were located. Officer Wheelar proceeded to the far side of the aisle, and at that time, Clenna observed him and began walking. Officer Wheelar asked Clenna to stop, but Clenna continued walk-

---

1. Ind.Code § 35–48–4–8.3(c) (1998).

ing. At that time, Officer Wheelar told Clenna that he needed to go back to where the other man was standing so they could talk. Tr. p. 8.

Officer Wheelar and Clenna then proceeded back to where the other man was standing. Officer Wheelar asked Clenna if he had any weapons, and Clenna told him no. Tr. p. 8. At trial, Officer Wheelar stated that he believed that Clenna might have a weapon because the report involved a possible robbery and because Clenna had attempted to quickly walk away when he first observed the officer. Tr. pp. 9, 17. Officer Wheelar then began a patdown of Clenna. When Officer Wheelar came to Clenna's right front coat pocket, Clenna quickly shoved his hand into that pocket. Officer Wheelar grabbed Clenna's wrist and pulled his hand out of the pocket. Clenna had a knife in his hand.

Officer Wheelar then secured Clenna's hands behind his back by using his own hands and continued to patdown Clenna. Officer Wheelar reached Clenna's left front pant pocket and felt a cylindrical object with holes in each end. He asked Clenna what it was, and Clenna replied, "You know what that is, you might as well go ahead and get it." Tr. p. 9. Officer Wheelar removed the object and discovered that it was a glass tube with some brass filtering in one end. This glass tube also had burn marks and a white, hazy residue inside. In his experience, Officer Wheelar believed that this glass tube was a pipe used to ingest crack cocaine. Tr. p. 11.

On October 30, 2001, Clenna was charged with reckless possession of paraphernalia, as a Class A misdemeanor. A bench trial was held on May 13, 2002, and the trial court found Clenna guilty. The trial court sentenced Clenna to 365 days with 357 days suspended. Clenna was also assessed a fine of $1.00, court costs of $129.00, and a drug interdiction fee of $200.00. Clenna now appeals.

## I. Admission of Evidence

■■■■ The admissibility of evidence is within the sound discretion of the trial court. *Williams v. State*, 754 N.E.2d 584, 587 (Ind.Ct.App.2001), *trans. denied.* We will not disturb its decision absent a showing that the trial court abused its discretion. *Id.* When we review a trial court's ruling on the validity of a search and seizure, we will consider the evidence most favorable to the ruling, along with any uncontradicted evidence to the contrary in order to determine if there is sufficient evidence to support the ruling. *Id.*

### A. Investigatory Stop [2]

■■■■ It is well-settled Fourth Amendment jurisprudence that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if the officer has a reasonable suspicion that criminal activity 'may be afoot.' *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *trans. denied* (citing *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "Reasonable suspicion is satisfied where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." *Williams*, 754 N.E.2d at 587.

---

**2.** In his appellate brief, Clenna notes that both the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution protect people from unreasonable searches and seizures. Nevertheless, Clenna fails to provide an independent analysis of Article I, Section 11; instead, his focus is on the Fourth Amendment. *See* Br. of Appellant pp. 9–18. Failure to independently argue under Article I, Section 11 constitutes waiver of the issue on appeal. *See* Ind. Appellate Rule 46(A)(8).

Clenna argues that Officer Wheelar impermissibly performed an investigatory stop on him because Officer Wheelar did not have reasonable suspicion that Clenna was about to commit a crime. Therefore, he claims that the evidence seized as a result of the illegal stop was inadmissible.

In this case, Officer Wheelar received a report of suspicious people in a drug store. The store clerk was suspicious of the two men and was afraid they were going to rob the store because they had been inside of the store for over thirty minutes, kept making advances on the cash register, and would retreat to the back of the store whenever someone entered the store. Officer Wheelar was familiar with the drug store because he had been called there on previous reports of shoplifting and robberies. When Officer Wheelar arrived at the drug store, the store clerk pointed him to the aisle where the suspicious men were located and watching the cash register. Officer Wheelar then began walking down the aisle where Clenna was located, and when Clenna observed the officer, he began to quickly walk away. He ignored Officer Wheelar's initial request for him to stop. When taken together, all of the facts known to Officer Wheelar and the reasonable inferences drawn from them constituted reasonable suspicion that criminal activity was about to occur and justified a brief investigatory stop. *Williams,* 754 N.E.2d at 587.

B. *Patdown*

■■■ "If a police officer has a reasonable fear of danger when making a Terry stop, he may conduct a carefully limited search of the suspect's outer clothing in an attempt to discover weapons that might be used to assault him." *Granados v. State,* 749 N.E.2d 1210, 1213 (Ind.Ct.App.2001), *trans. denied* (citing *Shinault v. State,* 668 N.E.2d 274, 277 (Ind.Ct.App.1996)). The

purpose of a patdown search is to allow the officer to continue his investigation without fearing violence, and therefore, it should be confined to its protective purpose. *Id.* "The officer need not be absolutely certain that the suspect is armed; 'the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Id.* (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. 1868). In determining whether an officer acted reasonably under the circumstances, we look to see if there existed articulable facts and reasonable inferences drawn therefrom in light of the officer's experience to support a reasonable belief that the individual was armed and dangerous; a generalized suspicion that the individual may be dangerous is not enough. *Granados,* 749 N.E.2d at 1213; *Tumblin v. State,* 736 N.E.2d 317, 322 (Ind.Ct.App.2000), *trans. denied.* Clenna contends that Officer Wheelar did not have reasonable suspicion to perform a patdown search, and therefore, the patdown violated his Fourth Amendment rights and the evidence seized during the search was not admissible.

■■■ Here, Officer Wheelar was aware of the suspicious behavior of the two men that the clerk had observed prior to his arrival, and he observed Clenna and the other man watching the cash register. When Clenna observed Officer Wheelar approaching him in the aisle, Clenna began walking quickly. These facts known to the officer implied that a robbery was afoot. Officer Wheelar testified that because the report was of a suspected robbery and because most robberies involve a weapon, he felt in danger for his safety and therefore, performed a patdown on Clenna. Tr. p. 17. An officer is allowed to use the facts known to him or her, as well as the reasonable inferences to be drawn from these facts in light of the officer's experi-

ence, to make a determination that the individual may be armed. *Granados*, 749 N.E.2d at 1213. Under these facts and circumstances, Officer Wheelar had reasonable suspicion to believe that Clenna may be armed, and therefore, the patdown search was proper. The pipe was therefore, properly admitted into evidence because the patdown search was proper, and during the patdown, Clenna gave consent for Officer Wheelar to retrieve the pipe out of his pocket.[3]

## II. Indigency Hearing

■■■■■ "Sentencing a defendant rests within the trial court's discretion and will be reversed only upon showing a manifest abuse of discretion." *Wooden v. State*, 757 N.E.2d 212, 216 (Ind.Ct.App.2001), *trans denied*. Indiana Code section 33–19–2–3 states in pertinent part:

> When the court imposes costs, it shall conduct a hearing to determine whether the convicted person is indigent. If the person is not indigent, the court shall order the person to pay:
>
> (1) the entire amount at the time sentence is pronounced;
>
> (2) the entire amount at some later date; or
>
> (3) specified parts at designated intervals.

Ind.Code § 33–19–2–3(a) (1998). Clenna argues that because the trial court did not hold an indigency hearing as required by this statute, the court committed sentencing error.

Here, at sentencing, the trial court assessed Clenna $1.00 in fines, $129.00 in court costs, and a $200.00 drug interdiction fee. Clenna then requested to be found indigent, and the trial court denied his request. Tr. p. 26. Clenna stated that he had a job that paid seven dollars an hour, but that he had four children to support and that he had rent to pay. Tr. pp. 26–27. Clenna previously had counsel appointed to represent him during his trial, and the trial court subsequently appointed pauper counsel for Clenna's appeal and found him indigent for purposes of appellate counsel. Tr. p. 27.

Although a full-blown hearing on the subject of indigency was not held, Clenna was found indigent for purposes of trial counsel and for purposes of appellate counsel. Under similar circumstances, this court has held that a separate indigency hearing is not required when a trial court appoints pauper counsel to represent the defendant at trial and to represent him on appeal because these actions indicate an intention by the trial court to find the defendant indigent. *Wooden*, 757 N.E.2d at 217–18. But, additionally in the present case, Clenna was not found to be indigent specifically as to the fines and costs that were assessed. As to this, we hold that if a defendant is found to be indigent as to the subject of attorney's fees, then he is also as a matter of law indigent as to any fines and costs that are assessed. Because the trial court's actions of appointing counsel for both trial and for appeal indicate an intention to find Clenna indigent, we find no error in the imposition of fines and costs without a separate indigency hearing.

■■■■ Clenna also contends that because the trial court did not include in the sentencing order language stating that Clenna shall not be imprisoned for the failure to pay any fines or costs, the case should be remanded to add that language to the order. "[W]hen fines or costs are imposed upon an indigent defendant, such a person

---

3. Because we find that the evidence was properly admitted at Clenna's trial, we also find that there was sufficient evidence to support Clenna's conviction for reckless possession of paraphernalia, as a Class A misdemeanor.

may not be imprisoned for failure to pay the fines or costs." *Whedon v. State,* 765 N.E.2d 1276, 1279 (Ind.2002). Although this still may be true, our supreme court recently held that it is no longer the rule that sentencing orders must include a statement of prohibition against imprisonment for failure to pay fines or costs. *Id.* They reasoned that insisting that "this warning be included in every sentencing order does not substantially serve defendants or the just and efficient administration of justice." *Id.* Therefore, it was not necessary for the trial court to include a statement prohibiting imprisonment for failure to pay fines or costs in the sentencing order, and there was no sentencing error.

### Conclusion

Reasonable suspicion existed to justify the investigatory stop and patdown search of Clenna. The trial court did not abuse its discretion when it did not hold a separate indigency hearing or include language prohibiting imprisonment for failure to pay fines or costs in its sentencing order.

Affirmed.

RILEY, J., concurs.

BAKER, J., concurs in result with opinion.

BAKER, Judge, concurring in result.

I concur with the majority's determination that the investigatory stop and patdown of Clenna was proper. I also agree that the trial court properly exercised its discretion when it did not hold a separate indigency hearing or include language in the sentencing order that prohibited Clenna's imprisonment in the event that he failed to pay the fines and costs that he had been ordered to pay.

I must part ways, however, with the majority's declaration that "if a defendant is found to be indigent as to the subject of attorney's fees, then he is also *as a matter of law* indigent as to any fines and costs that are assessed." Op. at —— (emphasis added). In my view, the determination of indigency with respect to a defendant's ability to pay fines and costs remains fact-sensitive, notwithstanding the trial court's decision to appoint pauper counsel at either the trial or appellate level or both.

When the trial court ordered the appointment of trial and appellate counsel to represent Clenna, it was certainly aware of Clenna's ongoing indigency. While the judge may have found that Clenna could not afford legal counsel, it may be gleaned from the record that he nonetheless made the determination that Clenna did have sufficient funds with which to pay his fines and costs because he was employed. It is apparent that the judge ordered such payments notwithstanding Clenna's contention that he had rent to pay and four children to support. Tr. pp. 26–27. Moreover, in light of the suspended sentence and nearly one-year probation period that Clenna received, the trial court likely afforded him that period of time in which to pay those amounts. Thus, inasmuch as the trial court properly ordered Clenna to pay fines and costs, notwithstanding its determination of indigency with regard to the appointment of counsel, I vote to affirm the judgment in all respects.