Corey **PURIFOY**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0406–CR–511.

Court of Appeals of Indiana.

Jan. 26, 2005.

Transfer Denied March 31, 2005.

---

David Pardo, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BARNES, Judge.

**Case Summary**

Corey Purifoy appeals his conviction and part of his sentence for theft. We affirm.

**Issues**

The issues before us are:

I. whether fundamental error occurred when the State introduced hearsay evidence during the trial;

II. whether the State presented sufficient evidence to support Purifoy's conviction; and

III. whether the trial court erred in imposing a fine and costs against Purifoy as part of his sentence.

**Facts**

The evidence most favorable to the conviction reveals that on September 4, 2003, Charles McElheny's home was burglarized and several items of property, including a 35mm camera, were stolen.[1] Shortly thereafter, Purifoy purchased the camera on the street from Antoine Neblett. Neblett was frequently in Purifoy's neighborhood offering things for sale, including merchandise with the price tags still on them, for significantly less than retail value. Purifoy paid Neblett $35 for the camera but believed he could pawn it for significantly more than that, and he did in fact pawn it for $75. McElheny later called the pawnshop and discovered that his camera had been pawned there. The pawn ticket for the camera had Purifoy's name on it.

The State charged Purifoy with theft. Purifoy testified during a bench trial that he had pawned only two items during his entire lifetime. On rebuttal, Marion County Sheriff's Detective Henry Rendleman testified that he had looked up Purifoy in a computer system that keeps track of pawning and discovered that Purifoy had pawned between twenty and forty items during the past six months. The trial

---

1. The State asserted in closing argument, and asserts on appeal, that the camera had a value of $500. In fact, there was no trial testimony or evidence as to the camera's value. McElheny testified that the entire value of everything stolen from his home was $1000.

court found Purifoy guilty as charged. As part of Purifoy's sentence, the trial court assessed a fine of $500 and court costs of $134. Purifoy now appeals.

### Analysis

#### I. Introduction of Hearsay

Purifoy asserts that the following testimony related inadmissible hearsay: (1) McElheny's testimony that the Sheriff's Department recovered his camera from the pawnshop; (2) Detective Rendleman's testimony that McElheny had discussed his camera with the pawnshop owner; and (3) Detective Rendleman's testimony that he learned from a computer database that Purifoy had pawned numerous items in the past several months. Purifoy also contends that Detective Rendleman's testimony regarding the computer database violated the "best evidence" rule, embodied in Indiana Evidence Rule 1002, and that at a minimum a printout of the data Detective Rendleman was referring to should have been introduced into evidence.

■ We need not delve into an analysis of whether the introduction of this evidence violated the hearsay and "best evidence" rules. As Purifoy acknowledges, he did not object to the introduction of any of this evidence during trial. Therefore, we may reverse Purifoy's conviction only if he has demonstrated the existence of fundamental error. *See Boesch v. State,* 778 N.E.2d 1276, 1279 (Ind.2002). "The 'fundamental error' rule is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.* The mere fact that error occurred and that it was prejudicial will not satisfy the fundamental error rule. *Stewart v. State,* 567 N.E.2d 171, 174 (Ind.Ct.App.1991), *trans. denied.* Fundamental error, therefore, re-

quires a defendant to show greater prejudice than ordinary reversible error because no objection has been made. *State v. Eubanks,* 729 N.E.2d 201, 205 (Ind.Ct. App.2000), *trans. denied.*

■ The first two statements Purifoy challenges are directed to evidence establishing that McElheny's camera was pawned at and recovered from the pawnshop. These facts, however, were not disputed during trial. At the beginning of trial, the State offered into evidence the pawnshop ticket indicating that Purifoy had pawned a 35mm camera. The deputy prosecutor stated: "At this time judge I think by stipulation with the defense I'm going to offer State's exhibit one and show that the defendant did pawn the alleged camera.... Is that correct?" Tr. p. 6. Defense counsel responded, "Yes." *Id.* at 7. Thus, there was never any question that Purifoy had pawned McElheny's camera. The evidentiary dispute in this case was whether Purifoy knew the camera was stolen.

■ Admittedly, Detective Rendleman's testimony regarding the pawnshop computer database did bear more directly on that issue because it contradicted Purifoy's claim of having pawned only two items during his entire life. Still, we cannot say the introduction of this evidence constituted fundamental error. First, we observe that the purpose of the contemporaneous objection rule "is to promote fair trial by precluding a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him." *Stewart,* 567 N.E.2d at 174. The rule requires parties to voice objections in time so that harmful error may be avoided or corrected and a fair and proper verdict will be secured. *Id.* Here, if Purifoy had objected to this evidence during trial, the State might have been able to present

sufficient preliminary evidence to satisfy an exception or exceptions to the hearsay rule or to produce a computer printout of the database. On appeal, the State has no opportunity to present such evidence. We are reluctant to say the State could not have satisfied the hearsay rules or the "best evidence" rule when the State had no opportunity to litigate those issues before the trial court.

■ Second, we cannot say the introduction of the evidence, even if it should not have been introduced and even if it slightly prejudiced Purifoy, was such a blatant denial of fundamental due process so as to require reversal of Purifoy's conviction. The conviction was not based solely on this evidence, as there were additional reasons to question Purifoy's claim that he had no idea the camera was stolen when he purchased it as we describe in the next section of this opinion. Furthermore, Purifoy's contention that the introduction of this evidence violated his right to confrontation under the United States and Indiana Constitutions is unavailing. Demonstrating the denial of any specific constitutional right does not by itself resurrect a forfeited claim. *Taylor v. State,* 717 N.E.2d 90, 93 (Ind.1999). We find no fundamental error in this case.

## II. Sufficiency of the Evidence

Purifoy also contends the State presented insufficient evidence to support his conviction. In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. *Overstreet v. State,* 783 N.E.2d 1140, 1152 (Ind.2003), *cert. denied.* We look only to the evidence most favorable to the verdict and the reasonable inferences therefrom. *Id.* We will uphold a conviction if there is substantial evidence of probative value from which a fact finder could have found the defendant guilty beyond a rea-

sonable doubt. *Id.* In order to convict Purifoy of theft as charged in this case, the State was required to prove that he knowingly exerted unauthorized control of another person with intent to deprive the person of any part of its value or use. Ind.Code § 35–43–4–2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35–41–2–2(b).

■ Purifoy first contends that the State failed to prove that he pawned McElheny's camera. Specifically, he notes that the State did not introduce the camera into evidence so that McElheny could identify it, nor did it introduce any evidence regarding serial numbers or other identifying characteristics. However, as we noted earlier, defense counsel stipulated at the beginning of the trial that Purifoy pawned "the alleged camera." Tr. pp. 6–7. Purifoy cannot now claim that the State failed to prove he pawned McElheny's camera.

■ Purifoy also argues that the State failed to prove he was aware the camera was stolen when he pawned it. We begin by observing that this case appears to be more like a receiving stolen property case, but the State did not charge that offense. The central issue in this case, as was the case in several reported decisions concerning receiving stolen property, is knowledge of the stolen character of the property. However, "there is nothing in logic that would prevent a person not the actual thief from knowingly possessing the property of another with intent to deprive the person of its use and, therefore, being guilty of Theft." *Gibson v. State,* 643 N.E.2d 885, 891 (Ind.1994). Thus, although the State did not allege that Purifoy was the actual thief in this case, it was permissible to charge him with theft rather than receiving stolen property.

It will be helpful to analyze the "knowledge" requirement in this theft case by referring to receiving stolen property cases; the context is the same in either scenario.

 "Knowledge that property is stolen may be inferred from the circumstances surrounding the possession." *Bennett v. State*, 787 N.E.2d 938, 946 (Ind. Ct.App.2003), *trans. denied.* The test of knowledge is not whether a reasonable person would have known that the property had been the subject of theft but whether, from the circumstances surrounding the possession of the property, the defendant knew that it had been the subject of theft. *Gibson*, 643 N.E.2d at 888. Possession of recently stolen property when joined with attempts at concealment, evasive or false statements, or an unusual manner of acquisition may be sufficient evidence of knowledge that the property was stolen. *Id.*

Here, because of the stipulation and McElheny's testimony regarding the burglary of his house, there is sufficient evidence that the camera Purifoy pawned was in fact stolen. Purifoy's own testimony as to how he obtained the camera revealed a highly unusual manner of acquisition. He purchased it on the street from Neblett, who frequently sold items in Purifoy's neighborhood. The items sometimes included brand new clothing with the tags still on them that Neblett sold for as little as $25 on items marked for sale at $150. Detective Rendleman also testified that Neblett was frequently under police investigation for crimes such as burglary, carjacking, and robbery, and was often implicated by persons in Purifoy's neighborhood for selling stolen goods.

Purifoy contends that this evidence is not sufficient to prove he knew the camera was stolen, especially because he testified as to his learning disabilities and general lack of education. Purifoy specifically claimed at trial that he thought Neblett was selling his own property in order to support a drug habit. The trial court, however, was in the best position to judge the credibility of Purifoy's testimony and to reject or accept that testimony as it saw fit. We observe that despite Purifoy's claim of naiveté, he was savvy enough to realize that he could pawn the camera for much more than what Neblett was asking for it. Also, the manner in which Neblett, a notorious person in Purifoy's neighborhood, regularly sold merchandise on the street screams theft. This circumstantial evidence is sufficient to support the trial court's conclusion that Purifoy knew the camera was stolen.

### III. Assessment of Fine and Costs

Purifoy's final claim is that the trial court was required to conduct a hearing to determine whether he was indigent before assessing a fine of $500 and court costs of $134 as part of his sentence. It is true that as a general matter, a trial court is required to conduct a hearing to determine whether a convicted person is indigent when imposing a fine and/or court costs. *See* I.C. §§ 33–19–2–3(a); 35–38–1–18(a). We have held that a separate indigency hearing is not required when a trial court appoints pauper counsel to represent the defendant at trial and to represent him on appeal because these actions indicate an intention by the trial court to find the defendant indigent. *Clenna v. State*, 782 N.E.2d 1029, 1034 (Ind.Ct.App.2003).

Here, at the time of sentencing the trial court did determine that Purifoy was indigent for purposes of appointment of pauper appellate counsel. This was sufficient for purposes of imposing a fine and court costs as well. *See id.* If a defendant is found to be indigent as to the subject of attorney's fees, then he is also as a matter

of law indigent as to any fines and costs that are assessed. *Id.*

This finding of indigency also means that Purifoy may not be imprisoned at this time for failure to pay the fine or costs. *See Whedon v. State,* 765 N.E.2d 1276, 1279 (Ind.2002). To the extent the trial court's written sentencing statement does not recite an express prohibition of imprisonment for failure to pay the fine or costs, it did not need to do so. *Id.* The trial court stated at sentencing that upon the completion of Purifoy's 363 days of probation, it would evaluate whether he was indigent at that time and would not imprison him for failing to pay the fine and costs if he could not pay them. Specifically, the trial court noted that Purifoy was currently enrolled in a vocational training program and would have a year to find employment and, therefore, he might obtain the ability to pay the fine and costs. This protocol is precisely in keeping with *Whedon,* which stated that "a defendant's financial resources are more appropriately determined not at the time of initial sentencing but at the conclusion of incarceration, thus allowing consideration of whether the defendant may have accumulated assets through inheritance or otherwise." *Id.* There is no error in the trial court's imposition of a fine and court costs in this case and delaying a final determination as to Purifoy's indigency until the completion of his term of probation.

### Conclusion

The introduction of allegedly inadmissible hearsay in this case did not constitute fundamental error, and there was sufficient evidence to support Purifoy's conviction. Additionally, the trial court did not err in imposing a fine and costs against Purifoy as part of his sentence. We affirm.

Affirmed.

MAY, J., concurs.

DARDEN, J., concurs in result.