## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2016, 8:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Eldridge, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 29, 2016 <br><br> Court of Appeals Case No. <br> 49A02-1512-CR-2260 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Barbara Crawford, Judge <br><br> Trial Court Cause No. <br> 49G09-1411-F6-51834 |

**Baker, Judge.**

[1] Michael Eldridge appeals his convictions for Residential Entry,[1] a Level 6 felony, and Resisting Law Enforcement,[2] a class A misdemeanor. He argues that the trial court erroneously admitted a 911 call into evidence. Eldridge also seeks review of a fine that is listed on his sentencing order, even though the trial court found him indigent as to fines and costs. Finding no error in the admission of the 911 call, but finding that the sentencing order needs clarification, we affirm and remand.

## Facts

[2] At around 1:00 a.m. on November 14, 2014, Indianapolis Police Officers Dane Elkins and Bryan Zotz received a report of a burglary in progress at 3050 Central Avenue. The report described the suspect as a Black male in a black hoodie. Riding in the same marked police car, both officers arrived at the scene in less than one minute.

[3] When the officers arrived at the location of the reported burglary, they noticed that there were broken windows and that some lights were on inside the residence. They also noticed a man standing inside the door of the house. This man, later identified as Eldridge, matched the description of the suspect from the report. Because this particular area of Central Avenue is lined with street

---

[1] Ind. Code § 35-43-2-1.5.

[2] Ind. Code § 35-44.1-3-1(a).

lights, the officers were able to get good glimpses of Eldridge's face. As the officers emerged from their police car, Eldridge exited the house and began running toward the back of the house. At this point, Officer Elkins drew his weapon, repeatedly ordered Eldridge to show his hands, and ran after him. Officer Zotz, meanwhile, ran across to the other side of the house. The three men went back and forth behind the house several times, as Eldridge kept changing his path of direction to evade the officers. When the officers eventually caught up to Eldridge and handcuffed him, they noticed that he had blood on his hands and body. They checked Eldridge for injuries and saw that he had a cut on the right side of his back. They then called an ambulance.

[4] When the officers questioned him, Eldridge stated that he had been at the residence to see a woman. He insisted that he needed to get inside the house, even though the occupants had prevented him from doing so. Afterward, Officers Elkins and Zotz spoke with the people inside the house, but neither officer recalls speaking to anyone that had called the police.

[5] On November 26, 2014, the State charged Eldridge with Level 6 felony residential entry and class A misdemeanor resisting law enforcement. Eldridge's jury trial was held in October 2015. At trial, Eldridge objected to the admission of the 911 call that alerted the police. The trial court admitted this evidence and played the recording in the courtroom.

[6] The caller in the recording gives his name as Damascus Cheatham, and describes the ongoing events to the operator. However, some details of the

recording indicate that Cheatham did not actually see the attempted entry as it was occurring; at one point, when the operator asks for more details, Cheatham responds that he does not know and explains that he is inside the bedroom with his cousin and two little girls. Later on, Cheatham can be heard relaying the sequence of events from an unidentified male who was also in the house. At trial, Officers Elkins and Zotz testified that they did not speak to a man named Damascus Cheatham inside the house after they had arrested Eldridge.

[7] The jury found Eldridge guilty on both charges. The trial court sentenced Eldridge to concurrent terms of 545 days for Count 1, with 365 days suspended to probation, and to 365 days for Count 2, with 315 days suspended to probation. The trial court also ordered Eldridge to complete alcohol evaluations and treatment while on probation. Although the trial court found Eldridge indigent as to fines and costs, the sentencing order nevertheless lists a user fee of $250 for alcohol and drug programs. Eldridge now appeals.

## Discussion and Decision

## I. Admission of the 911 Call

[8] Eldridge's first argument is that the trial court erred by admitting the 911 call into evidence. Eldridge contends that the call is hearsay evidence that does not fit into an exception to the hearsay rule. He also argues in the alternative that the 911 call was not authenticated and should have been excluded for that reason.

[9] A trial court errs by admitting evidence if its decision flies against the logic and effect of the facts and circumstances before it, or if a misinterpretation of law has occurred. *E.g.*, *Teague v. State*, 978 N.E.2d 1183, 1187 (Ind. Ct. App. 2012). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted, and it is inadmissible unless it falls under an exception. Ind. R. Evid. 801(c). The exclusion of hearsay is meant to prevent the introduction of unreliable evidence that cannot be tested through cross-examination. *Truax v. State*, 856 N.E.2d 116, 124 (Ind. Ct. App. 2006).

[10] A statement that qualifies as an excited utterance is admissible as an exception to the hearsay rule. Indiana Evidence Rule 803(2) defines an excited utterance as a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." In this regard, we turn to *Teague*, where this Court held that the statements of a 911 caller who did not have personal knowledge of the underlying incident could be admissible if the caller was merely repeating the statements of a victim to the 911 operator. 978 N.E.2d at 1188. In other words, there is no requirement that a declarant have personal knowledge of the underlying event or condition being reported. *Id.* at 1188 ("Here, [the declarant] did not have personal knowledge of the underlying incident [that the victim] described, but she did have personal knowledge of, and was responding to, the startling event or condition that came to her home in the middle of the night in the person of a bloodied [victim] screaming for help.").

[11]    We hold that the statements made in Cheatham's call qualify as an excited utterance. The trial court could reasonably believe that the declarant, Cheatham, was still under the stress of experiencing an attempted residential burglary and that he was, therefore, unlikely to make a deliberate falsification to the 911 operator. And just as the declarant in *Teague* relayed messages between the 911 operator and the victim, Cheatham relayed messages between the unidentified male and the operator in this case. Furthermore, the temporal proximity in this instance between the call and the officers' arrival at the scene increases the likelihood that Cheatham was still in an excited condition of experiencing an entry into his house, even if he did not witness it firsthand. This 911 call bears "sufficient indicia of reliability, the hallmark of all hearsay exceptions." *Id.* We therefore affirm the trial court's decision to admit the 911 call into evidence under the excited utterance exception to the hearsay rule.[3]

[12]    Lastly, we address Eldridge's argument that the 911 call was not properly authenticated. Because Eldridge did not base any of his objections at trial on the ground of improper authentication, he must demonstrate that there was fundamental error. *Purifoy v. State*, 821 N.E.2d, 409, 412 (Ind. Ct. App. 2005). Fundamental error "applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Wilson v. State*,

---

[3] As we find the 911 call admissible as an excited utterance, we need not and will not address Eldridge's argument regarding the present sense impression exception.

931 N.E.2d 914, 919 (Ind. Ct. App. 2010). We note that, even if the trial court's admission of the 911 call into evidence was error, it was harmless. An error is harmless if there is "substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." *Teague*, 978 N.E.2d at 1189. Officers Elkins and Zotz themselves witnessed Eldridge attempting to break into the residence at 3050 Central Avenue. The officers got good glimpses of Eldridge's face as he ran away from the house toward the backyard. As the alleged error was harmless, it was a far cry from fundamental. Therefore, we decline to reverse the trial court based on Eldridge's authentication argument.

## II. The Alcohol and Drug Program User Fee

[13] Eldridge next argues that the trial court should vacate the $250 fine that is listed on his sentencing order. We remand this issue to the trial court for clarification.

[14] In-court pronouncements prevail over subsequent contradictory language. *Stott v. State*, 822 N.E.2d 176, 178 (Ind. Ct. App. 2005). Thus, cases in which in-court pronouncements vary from the written record should be remanded to the trial court for correction.

[15] At Eldridge's sentencing hearing, the trial judge found that Eldridge was indigent as to fines and costs. Moreover, one section of Eldridge's sentencing order states that Eldridge is indigent for "court costs, fines, and probation fees"; however, the Court Costs and Fees section of the order also lists an

"Alcohol/Drug Services Prgrm User Fee" in the amount of $250. Given this discrepancy, we remand this issue back to the trial court to clarify its order.

[16]    The judgment of the trial court is affirmed and remanded.

May, J., and Brown, J., concur.