Alexa WHEDON, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–0009–CR–540.

Supreme Court of Indiana.

April 16, 2002.

Appeal from the Marion Superior Court; Cause No. 49G04–9903–CF–035467; Patricia J. Gifford, Judge.[1]

Victoria Ursulskis, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**DICKSON, Justice.**

The defendant, Alexa Whedon, was convicted of murder[2] for the 1998 killing of Shanna Sheese.[3] In this appeal, she presents issues regarding the sufficiency of the evidence and the language of the sentencing order. The defendant first contends that the evidence was insufficient to prove beyond a reasonable doubt that she aided and abetted the murder. In addressing a claim of insufficient evidence, an appellate court must consider only the probative evidence and reasonable inferences supporting the judgment, without weighing evidence or assessing witness credibility, and determine therefrom whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Marcum v. State*, 725 N.E.2d 852, 863 (Ind.2000).

Under Indiana's accomplice liability statute, a person "who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense." Ind.Code § 35–41–2–4. Factors considered by the fact-finder to determine whether a defendant aided another in the commission of a crime include: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. *Edgecomb v. State*, 673 N.E.2d 1185, 1193 (Ind.1996); *Johnson v. State*, 490 N.E.2d 333, 334 (Ind.1986). While the defendant's presence during the commission of the crime or her failure to oppose the crime are, by themselves, insufficient to establish accomplice liability, the

---

1. The bench trial and sentencing hearing were conducted by Diane Marger Moore, Master Commissioner.

2. Ind.Code § 35–42–1–1.

3. The defendant was originally charged along with Malcolm Wilson and Vanessa K. Thompson for the murder of Shanna Sheese. Following severance upon motion of the State, each defendant was tried separately.

trier of fact may consider them along with the factors above to determine participation. *Echols v. State,* 722 N.E.2d 805, 807 (Ind.2000); *Burkes v. State,* 445 N.E.2d 983, 987 (Ind.1983); *Harris v. State,* 425 N.E.2d 154, 156 (Ind.1981).

■ Applying the standard of review, the evidence shows that the victim's body was discovered in a vacant lot, her death resulting from head wounds inflicted with a heavy, blunt object. Around the time of the murder, one witness saw the defendant, along with Vanessa Thompson, Malcolm Wilson, and another individual get out of a pick-up truck at a crack house. In the back of the truck was something covered by a tarp. The witness saw a pair of white low top tennis shoes sticking out from the edge of the tarp. The shoes seemed to be on feet because they were pointed up. Thompson quickly covered the feet with the tarp. The victim had been seen wearing the same type of shoes. Several witnesses testified regarding admissions made by the defendant of her involvement in the murder. She variously stated that she hit the victim in the head with a brick, that she held the victim down while Thompson hit her in the head, that she watched Thompson hold down the victim as a man named "Darrell" beat the victim in the head with a brick, that she was just a look-out, and that she helped hide the body. While the details and extent of the admissions vary, her statements were consistent that she was involved in the killing.

■ The defendant argues that the various statements attributed to her show inherent material contradictions and vacillation. She urges application of the incredible dubiosity rule. Under this rule, a reviewing court may reverse if it finds " 'inherently improbable' testimony or coerced, equivocal, wholly uncorroborated testimony of 'incredible dubiosity.' "

*Rodgers v. State,* 422 N.E.2d 1211, 1213 (Ind.1981) (citations omitted). Application of the rule is limited, however, to cases where a sole witness presents inherently contradictory testimony that is equivocal or coerced and there is a lack of circumstantial evidence of guilt. *White v. State,* 706 N.E.2d 1078, 1079–80 (Ind.1999).

In the present case, the supporting evidence comes from the testimony of several witnesses. Furthermore, even though this evidence primarily consists of the defendant's various statements to these witnesses, the substance of most of these statements consistently shows her role in aiding and abetting the murder. This evidence establishes the defendant's presence at the scene of the crime, her companionship with others engaged in the crime, her failure to oppose the crime, and her conduct during the crime.

We find from the evidence favorable to the judgment that a reasonable fact-finder could find beyond a reasonable doubt that the defendant either killed or aided and abetted the killing of the victim.

■ The defendant also contends that the trial court erred in its sentencing order when, after finding the defendant indigent, it imposed costs without expressly prohibiting incarceration for failure to pay those costs. The State argues in response that the prohibition upon imprisonment for failing to pay fines and restitution does not apply to court costs.

The trial court judgment stated in part: "The Court imposes as it must by law, $125 in court costs. The Court finds that you're indigent as to any other fines, costs or fees in regard to this matter." Record at 543.

Our cases do not provide a conclusive resolution regarding whether the rule requiring express prohibition of imprisonment for non-payment of fines applies

equally to costs. In *Fry v. State*, 447 N.E.2d 569 (Ind.1983), the trial court sentenced the defendant to a period of imprisonment and imposed a *fine* of $500. We summarily rejected the defendant's claim that the *fine* was imposed without the trial court first determining his status as an indigent, noting that the judgment included the statement: "The Defendant being indigent shall not be imprisoned for failure to pay any such costs and fine." *Id.* at 573. Four years later, in *Whitehead v. State*, 511 N.E.2d 284 (Ind.1987), the defendant alleged error in the imposition of a $1000 *fine* and ordered $4,418.32 paid in restitution. Without analyzing the issue, we noted the State's concession that "when a *fine* is imposed upon an indigent, the trial court must expressly state that the defendant shall not be imprisoned for failing to pay the *fine*." *Id.* at 296 (emphasis added). We declared our agreement, referring to *Fry*, and remanded the case to the trial court for the purpose of adding the indicated language. This Court thereafter interpreted *Whitehead* to hold "that when *fines or costs* are imposed upon an indigent, the trial court must expressly state that the defendant shall not be imprisoned for failing to pay the *fine*." *Petty v. State*, 532 N.E.2d 610, 612 (Ind.1989)(emphasis added). We found that the trial court "was correct in stating that she may not suspend or waive the *costs*, but that she will not and may not enforce the order of *costs* against an indigent." *Id.* at 612 (emphasis added). We found this expression of "non-enforcement of the *costs*" to satisfy the express statement requirement. *Id.* (emphasis added). In *Lock v. State*, 567 N.E.2d 1155 (Ind. 1991), we remanded to permit the trial court to amend its judgment imposing *fines* of $10,000 on each of two convictions, "to state that [the defendant] shall not be imprisoned for failing to pay the *fines* assessed." *Id.* at 1161 (emphasis added).

We likewise remanded for the addition of similar additional language in *Ridley v. State*, 690 N.E.2d 177, 182 (Ind.1997), where the trial court assessed $30,000 in *fines* and $10,000 for the *cost of representation*, finding that the appointment of pauper appellate counsel indicated the trial court's awareness of the defendant's indigence.

Although we note that most of our prior decisions primarily involved the imposition of fines, we have indicated our approval of the same sentencing language requirement for court costs as well. *See Petty*, 532 N.E.2d at 612. Furthermore, our legislature requires indigency hearings both as to the imposition of fines, Ind.Code § 35–38–1–18(a), and costs, Ind.Code § 33–19–2–3(a). We conclude that when fines or costs are imposed upon an indigent defendant, such a person may not be imprisoned for failure to pay the fines or costs.

■ We note, however, the dubious origin of the rule declaring that trial courts' sentencing orders must necessarily recite an express prohibition upon imprisonment for failure to pay fines or costs. Remanding to insist that this warning be included in every order sentencing an indigent defendant does not substantially serve defendants or the just and efficient administration of justice. Moreover, a defendant's financial resources are more appropriately determined not at the time of initial sentencing but at the conclusion of incarceration, thus allowing consideration of whether the defendant may have accumulated assets through inheritance or otherwise. Finding the supporting precedents insufficiently grounded and the rule lacking sound and substantial purpose, we overrule our precedents declaring that sentencing orders must include the prohibition against imprisonment for failure to pay fines or costs.

We affirm the judgment of the trial court.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.