**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JOHN ANDREW GOODRIDGE**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana



FILED

Feb 08 2012, 10:01 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DAVID L. SCUDDER,                    )
                                     )
        Appellant-Defendant,         )
                                     )
            vs.                      )        No. 16A04-1104-CR-207
                                     )
STATE OF INDIANA,                    )
                                     )
        Appellee-Plaintiff.          )

APPEAL FROM THE DECATUR CIRCUIT COURT
The Honorable Wendy W. Davis, Judge
Cause No. 16C01-0807-FD-204

**February 8, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

David L. Scudder appeals his conviction of Theft[1] and Official Misconduct,[2] both as class D felonies. Scudder challenges both convictions on grounds that they were not supported by sufficient evidence.

We affirm.

The facts favorable to the convictions are that on June 21, 2008, Ronald Owens, who owns and operates a wrestling company, arranged a promotional event at the Walmart Store in Greensburg, Indiana. At the event, Michael Rice, whose professional nickname apparently was "Even Colder," was to sign autographs and appear in photographs for a fee, posing to be professional wrestler Stone Cold Steve Austin. *See, e.g., Transcript* at 266. There seems to be some disagreement as to whether Rice's true identity was divulged or made known to Walmart and/or the patrons who ultimately attended the event. After the event started and Rice had been signing autographs and posing for photographs, Walmart assistant manager Chris Williams stopped by the event and began to suspect that the man signing the autographs was not, in fact, Stone Cold Steve Austin. Williams believed, or at least suspected, that Owens had perpetrated a fraud upon Walmart and its customers. Williams called Mike Cruze, a detective with the Greensburg Police Department (the GPD) and a part-time asset-protection manager at Walmart, and informed him that he intended to shut down the event and feared the gathered crowd would respond violently. Cruze contacted the GPD and asked them to send officers to the Walmart in the event that trouble arose. Among the officers dispatched to the scene was Scudder, who was a seven-year veteran of the GPD.

---

[1]  Ind. Code Ann. § 35-43-4-2 (West, Westlaw through end of 2011 1st Regular Sess.).
[2]  Ind. Code Ann. § 35-44-1-2 (West, Westlaw through end of 2011 1st Regular Sess.).

Scudder and Cruze were the first to arrive at the store. By that time, Rice had already left but Owens was still on the premises. Officer Brendan Williams and Lieutenant Larry Dance of the GPD arrived a short time later, as did Deputy Dave Henderson from the Decatur County Sheriff's Department. Scudder assumed the role of lead investigator. He interviewed Owens and several customers who had purchased photographs and autographs. Scudder believed there was sufficient evidence to establish probable cause that Rice and Ronald Owens had engaged in acts constituting the offenses of theft and deception, both class D Felonies. Lt. Dance advised Scudder to call the Decatur County Prosecutor's Office. Scudder and Cruze contacted Chief Deputy Prosecutor Jim Rosenberry, who advised them to keep any money they seized to use as evidence. Upon hearing this, Lt. Dance told Scudder to seize anything that might be useful at trial, including money and brochures. He also told Scudder to give a receipt to Owens for anything he seized from Owens.

The investigation revealed that Owens's event began at 2:00 p.m. and was stopped about 2:45 p.m. It was established that approximately eight people had paid for autographs, several of them paying for more than one. They were charged $10.00 per autograph. Owens stated that he had collected $166.00 for both the autographs and the sale of tickets to a wrestling performance. Scudder announced to several people present, including Cruze, that he was seizing the money. Owens gave Scudder personal cash in the amount of $166.00 and Scudder placed the money in a folder. In order to maintain proper records, members of the GPD are required to use Property Record and Receipts (PR&R) after collecting evidence. Rather than use a PR&R, however, Scudder asked assistant store manager Stacey O'Nan for a receipt book so he could give Owens a receipt. When O'Nan could not locate one, Scudder

retrieved a receipt book from Walmart's shelves and, using that, gave Owens a receipt for $154.00.

When the investigation was complete, Cruze heard Scudder state that he was leaving the store to put the evidence in his car. He opened the folder to show Cruze its contents. Scudder then exited the store alone and returned to his vehicle, which was parked behind the store. Scudder drove to the front of the store, where he and Cruze spoke for ten or fifteen minutes with Tracy Haines, Walmart's asset manager.

On the following Monday morning, June 23, 2008, GDP Assistant Chief Stacy Chasteen asked Cruz if Scudder needed anything further in conjunction with his investigation of the Walmart event. At that point, Cruze reviewed Scudder's report and noted that it recorded that Scudder had returned the confiscated money to the victims. This was not consistent with Cruze's observations at the scene. Cruze also noted that the report did not contain an evidence receipt for the property seized by Scudder. Cruze confirmed that there was no money in the evidence storage room and that no property sheet statement had been filed. Cruze called Scudder about the matter and Scudder claimed that he had returned the money to the victims. He also asked Cruze what the police department would have done with the money, which Cruze thought was a strange question under the circumstances. Cruze asked Haines about the matter, and Haines responded that he was not aware that the money had been returned. Cruze viewed the Walmart video of the incident and saw no evidence that the money had been returned. Finally, he spoke with the victims and Owens, all of whom told him the money had not been returned to them.

Scudder was charged with theft and official misconduct with respect to the missing

4

money. He was found guilty of both counts following a jury trial. The court sentenced Scudder to one and one-half years for each conviction, with the sentences to run concurrently. The court further ordered that thirty days of the sentence be served at the Decatur County Jail, with the remainder suspended to probation.

Scudder contends the evidence was not sufficient to support his convictions. Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a claim that the evidence introduced at trial was insufficient to support a conviction, we consider only the probative evidence and reasonable inferences that support the trial court's finding of guilt. We likewise consider conflicting evidence in the light most favorable to the trial court's finding. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. Instead, we will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt.

*Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). When considering a challenge to the evidence, we neither reweigh the evidence nor assess the credibility of witnesses. *Turner v. State*, 953 N.E.2d 1039 (Ind. 2011).

In essence, Scudder's challenge amounts to a claim that he was telling the truth when he said he returned the money to Owens before Owens left the Walmart store the day these events took place, and that Owens was lying when he testified to the contrary, i.e., that Scudder did not return the money. This is the sort of credibility assessment that our standard of review forbids us to perform. The jury determined that Owens's claim was more credible, and we are bound to respect that determination.

We note, however, that Scudder seeks a ruling that, by application of the principle of

5

incredible dubiosity, Owens's testimony is not worthy of belief.  Our Supreme Court has cautioned that this principle is "very narrow" and limited in application. *Turner v. State*, 953 N.E.2d at 1059.  Testimony may be disregarded on this basis, only "'where a sole witness presents inherently contradictory testimony that is equivocal or coerced and there is a lack of circumstantial evidence of guilt.'"  *Id*. (quoting *Whedon v. State,* 765 N.E.2d 1276, 1278 (Ind. 2002)).  We conclude that Owens's testimony was not uncorroborated.

First and foremost, no one saw Scudder return any of the money to Owens, Walmart, or the victims at the store.  We note also, as set out above and as acknowledged by Scudder at trial, that he did not follow standard GPD procedures after seizing the money from Owens.  For instance, Scudder did not give Owens a standard PR&R after receiving the money.  Moreover, Scudder's claim to have returned the money before he left the store stands in the face of evidence that he was instructed at the scene by Lt. Dance to seize evidence related to the alleged crime, and Chief Deputy Prosecutor Rosenberry specifically "told him that he needed to keep that money as evidence."  *Transcript* at 472.  Owens's testimony was sufficiently corroborated by these and other facts such that the principle of incredible dubiosity is inapplicable.  The evidence was sufficient to support the convictions.

Judgment affirmed.

RILEY, J., and MATHIAS, J., concur.