**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ERIN L. BERGER**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF C.R., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No.  82A04-1110-JV-595 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Brett J. Niemeier, Judge
Cause No.  82D01-1106-JD-269

**July 5, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

C.R. appeals his adjudication as a delinquent child for committing what would constitute class B felony burglary[1] if committed by an adult.

We affirm.

## ISSUE

Whether the State presented sufficient evidence to support the delinquency finding.

## FACTS

On April 28, 2011, Debra Quinn was sleeping upstairs in her home when her dog, which was kenneled in her living room, woke her up at some point between 2:00 and 2:30 in the morning due to incessant barking. Quinn went downstairs and noticed that a small flat screen television was missing from the kitchen. She went outside to her backyard and observed that the back gate on her privacy fence was wide open. Next, Quinn discovered that a motorized moped was missing "from the shed attached to the house," and later she found that a laptop computer was missing from a spare room near her bedroom. (Tr. 16).

All of the doors to Quinn's house were locked before she went to bed and she figured that "whomever was there knew where the hidden house key was out in the shed and they used the key to enter the house and locked it when they left." (Tr. 16).

On approximately June 5th or 6th of 2011, Detective Todd Seibert of the Evansville Police Department went to C.R.'s residence and questioned him regarding a spree of

---

[1] Ind. Code § 35-43-2-1.

burglaries in the area because C.R.'s name had come up as a possible suspect. C.R. told Detective Seibert that he did not know anything about the burglaries that had occurred.

On June 9, 2011, Detective Karen Montgomery, along with Detective Seibert, interviewed C.R. while his mother was present. C.R. admitted that he was with another person who had gone into the garage at 919 West Delaware street in Evansville, which is Quinn's address, and that he had stood outside in the alley while the other person removed property from the residence. Detective Montgomery "understood [C.R.] to say that he was the lookout." (Tr. 51). During the interview, C.R. informed the detectives that the stolen television was at the other person's residence, where Detective Spalding later recovered it.

The State filed a delinquency petition on June 17, 2011, alleging C.R. to be a delinquent child for committing acts that would constitute the following if committed by an adult: Count I: burglary, a class B felony; Count II: burglary, a class C felony; and Count III: receiving stolen property, a class D felony.

During the hearing on August 11, 2011, C.R. testified that eighteen-year-old Matthew Horton had taken the moped from the garage and that Horton had found a key to the house, went inside, and took a laptop, a TV, and a case of soda. C.R. stated that although he was with Horton, he did not enter the backyard or the house. He further testified that he did not encourage Horton to take anything nor helped carry away the stolen property. In addition, C.R. stated that he had been with Horton on several other occasions when Horton had stolen property. C.R. also signed as a witness when Horton traded the stolen moped for another person's car.

3

On August 26, 2011, the State dismissed Count III. The trial court found C.R. not guilty on Count II and adjudicated C.R. delinquent on Count 1. On September 14, 2011, the trial court made C.R. a ward of the Indiana Department of Correction and ordered him to attend the Indiana Boys School.

## DECISION

C.R. asserts that the evidence is insufficient to support his delinquency adjudication for burglary. Particularly, C.R. contends that the State failed to prove that C.R. was an accomplice to burglary.

> When reviewing a claim of sufficiency of the evidence with respect to juvenile adjudications, we do not reweigh the evidence or judge the credibility of witnesses. We look only to probative evidence supporting the adjudication and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the juvenile was guilty beyond a reasonable doubt. If there is substantial evidence of probative value to support the adjudication, it will not be set aside. The uncorroborated testimony of one witness may be sufficient by itself to sustain an adjudication of delinquency on appeal.

*D.W. v. State*, 903 N.E.2d 966, 968 (Ind. Ct. App. 2009) (internal citations omitted).

In order to prove that a person committed a class B felony burglary, the State must prove that the person broke or entered the dwelling of another with the intent to commit a felony in that dwelling. Ind. Code § 35-43-2-1. In this case, the State did not argue that C.R. committed burglary; instead, the State argued that C.R. was an accomplice to burglary.

In Indiana, "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense. . . ." I.C. § 35-41-2-4. Pursuant to the accomplice liability statute, the State had to present sufficient evidence

4

that C.R. knowingly or intentionally aided, induced, or caused Horton to commit the crime of burglary. "A person engages in conduct 'knowingly' if, when he engages in conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2.

There is no difference between the responsibility of a principal and that of an accomplice. *Wise v. State*, 719 N.E.2d 1192, 1198 (Ind. 1999). Therefore, a person can be charged as a principal even though there is only proof that he aided another person in the commission of a crime. *Id*. Furthermore, a person does not need to partake in every element of the crime to be convicted of that crime under accomplice liability. *Bruno v. State*, 774 N.E.2d 880, 882 (Ind. 2002).

Mere presence at the scene of a crime or failure to oppose the crime are, by themselves, insufficient to determine accomplice liability. However, the trier of fact may consider those factors along with others to establish whether a person participated in the commission of a crime. *Whedon v. State*, 765 N.E.2d 1276, 1277-78 (Ind. 2002). In general, the fact-finder may consider the following in determining whether a person acted as an accomplice in the commission of the crime: "(1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime." *Id*.

Each of the aforementioned factors can be considered to show that C.R. aided Horton in the commission of burglary. C.R. testified that he accompanied Horton to the residence and was present when Horton took the property from the house. Additionally, C.R. did not oppose Horton taking the moped or the other items from the house.

5

Furthermore, it is undisputed that C.R. was a companion of Horton. On the evening of this crime, C.R. had gone over to Horton's house and played video games. Later, C.R. went with Horton to buy cigarettes at a smoke shop. Prior to the instant burglary, C.R. had been with Horton on several other occasions when Horton had stolen property, and thus, the fact finder could reasonably infer that C.R. knew of Horton's propensity to steal.

As to C.R.'s assertion that the evidence of his conduct before, during, and after the occurrence of the burglary does not show that he acted as an accomplice, we disagree. Even though Horton informed C.R. in advance that he was going to steal the moped, C.R. still chose to accompany him to the scene. After the two arrived at the residence, C.R. stated that he stood outside in the alley. Detective Montgomery understood from C.R.'s statement that C.R. served as a lookout. The trial court agreed with Detective Montgomery's assessment, and we will not reweigh her testimony as a witness.

During his testimony, C.R. also stated he did not help Horton carry away the stolen property from the house. However, the property removed from the residence consisted of a laptop, a flat screen television, a case of soda, and a moped. Thus, the size and amount of property stolen from the house is circumstantial evidence that the trier of fact could reasonably infer that C.R. assisted Horton in carrying away the stolen property. Later, C.R. acted and signed as a witness for Horton's trading of the stolen moped to another person for a car.

Here, the probative evidence reasonably established that C.R. was an accomplice to Horton in the commission of the burglary, albeit C.R. may not have participated in

6

every element of the crime. Although C.R. testified that he did not encourage Horton to steal property or to go inside Quinn's house or backyard, he now asks us to reweigh the evidence and to judge the credibility of witnesses, which we decline.

In conclusion, the probative evidence presented by the State established that C.R. assisted Horton in the commission of the burglary. As a result, the evidence supports C.R.'s adjudication as a juvenile delinquent for committing what would constitute class B felony burglary if committed by an adult, beyond a reasonable doubt.

Affirmed.

RILEY, J., and NAJAM, J., concur.