**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JAMES A. EDGAR**
J. Edgar Law Offices, Prof. Corp.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MAURICE ERVIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1112-CR-626 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc Rothenberg, Judge
Cause No. 49F09-1003-FD-61386

**July 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Maurice Ervin appeals his conviction for attendance with an animal at a fighting contest as a Class D felony[1].  We affirm.

## Issue

Ervin raises one issue on appeal, which we restate as whether there was sufficient evidence to support his conviction.

## Facts

In July 2010, Ervin met with Donald Roberts and Tyrus Williams.  The men discussed the possibility of holding a dog fight at Williams's house in Indianapolis.  A fight was planned for August 6, 2010.  Two dogs were scheduled to fight, and one of these dogs was co-owned by Ervin and Roberts.  Ervin contributed $1,000 to purchase the dog, and Roberts contributed $500.

In the meantime, Roberts contacted Christopher Golightly of the Department of Agriculture to report the planned dog fight.  Roberts reported the fight with the intention of collecting a $5,000 reward, which is given by the Humane Society of Indiana for information relating to dog fighting.  Roberts did not inform Golightly that he was co-owner of the dog.

---

[1] Ind. Code § 35-46-3-9 includes three subsections: (1) the promotion of an animal fighting contest; (2) the use of an animal in a fighting contest; and (3) attendance at a fighting contest while person is in the possession of an animal.  The trial court found there was insufficient evidence to prove "promotion" or "use."  The abstract of judgment reads "use," but in fact Ervin was found guilty of the "attendance" portion.  Appellant App. p. 19.  The same statute applies regardless of the word or subsection used.

On August 6, 2010, Ervin gave Roberts a ride to Williams's house where the dog fight was to occur. The dog was weighed, and it exceeded the weight limit for the fight. Roberts walked the dog for some time, and the dog was successfully reweighed. Once the dog was the correct weight, Ervin washed it and prepared it for the fight.

Once the fight had begun, Roberts was to send a text to notify Officer Golightly. Roberts sent the text five minutes into the fight. Approximately fifteen members of the Indianapolis Metropolitan Police Department's SWAT team then executed a no-knock search warrant on the house and garage.

The officers found the dogs fighting in the garage. Twenty-four people were found in the house and garage including Ervin, Roberts, and Williams. The garage contained an abandoned vehicle and a small wooden pen, which resembled a miniature boxing ring. The dogs were fighting inside the wooden pen.

One individual told Officer Michael Antonelli, "Don't shoot my dog. Let me put him in a cage." Tr. p. 69. This individual then separated the dogs. Officer Joshua Barker saw Ervin separate the dogs. Ervin used a break stick to separate the dogs. A break stick is a device commonly used in dog fights that allows one to pry a dog's jaw open and stop the fight. The use of a break stick requires some skill to break up a fight and avoid injury. Ervin did not hesitate to enter the ring, and the dogs were not hostile towards him.

After a complete search of the house and garage, nine pit bulls were found. Dr. Cheryl Miller, a field veterinarian for the Indiana Board of Animal Health, examined the

3

dogs and found various injuries on the dogs that were consistent with being involved in dog fights. Five of the dogs were later euthanized. Various medical supplies consistent with dog fighting were found in the house. Chains, treadmills, and sleds, which are commonly used to train dogs for fighting, were also found in the house.

On August 10, 2010, the State charged Ervin with Count I, purchase or possession of an animal for fighting as a Class D felony; Count II, promotion, use of animals, or attendance with an animal at a fighting contest as a Class D felony; and Count VI, attendance at an animal fighting contest as a Class A misdemeanor.

A four-day bench trial was held from October 24 to October 27, 2011. Ervin admitted to Count VI at trial, and the trial court eventually found Ervin guilty of Counts I and II. At sentencing on November 11, 2011, the trial court merged the convictions for Counts I and VI into Count II. Ervin was sentenced to three years with 180 days in the Department of Correction, 180 days of community corrections, and 730 days of probation. Ervin now appeals.

**Analysis**

Ervin argues that there is insufficient evidence to prove that he was in attendance with an animal at a fighting contest. When reviewing the sufficiency of evidence to support a conviction, we consider only the probative evidence and reasonable inferences that support the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." Id. When

conflicting evidence is present, we consider it in a light most favorable to the conviction. Id. If there is substantial evidence such that a reasonable trier of fact could find that the defendant was guilty beyond a reasonable doubt, we will affirm. Dorsett v. State, 921 N.E.2d 529, 531 (Ind. Ct. App. 2010).

Ervin contends that Roberts's testimony should be given "no weight" as a result of the "incredible dubiosity" rule. Appellant Br. p. 9. An application of this rule would permit us to impinge upon the fact finder's function to assess the credibility of a witness. Turner v. State, 953 N.E.2d 1039, 1059 (Ind. 2011). The breadth of this rule is very narrow and permitted only "where a sole witness presents inherently contradictory testimony that is equivocal or coerced and there is a lack of circumstantial evidence of guilt." Id. (quoting Whedon v. State, 765 N.E.2d 1276, 1277 (Ind. 2002)). We disagree with Ervin's contention.

Ervin provides no specific examples of contradiction in Roberts's statements. The trial court believed Roberts to be credible and found "a lot of what he said corresponded and confirmed to other testimony of nonbiased witnesses or anyone else who had their credibility challenged." Tr. p. 449. Ervin's counsel had the opportunity to fully cross-examine Roberts at trial and impeach his credibility, but the trial court still found him to be credible. The "incredible dubiosity" rule is not applicable to this case. We rely on the trial court's assessment of Roberts's credibility.

In order to convict Ervin of attendance with an animal at a fighting contest as a Class D felony, the State needed to prove that Ervin knowingly or intentionally attended

an animal fighting contest with an animal in his possession. See Ind. Code § 35-46-3-9. Ervin claims that there is insufficient evidence to prove he was in possession of an animal.[2]

The State presented sufficient evidence that Ervin brought a dog to the dog fight. Roberts testified that they purchased the dog together. Ervin paid $1000 for the dog. Roberts further testified that Ervin and he trained the dog together through the use of treadmills and chains. Ervin was present at the meeting at which the fight was scheduled. Ervin transported the dog in a crate to Williams's house for the dog fight. Finally, Ervin prepared the dog prior to the fight.

Officer Antonelli testified that "one individual inside the garage said, 'Don't shoot my dog. Let me put him in a cage.'" Tr. p. 69. This same individual then separated the two dogs that were fighting. Officer Barker testified that Ervin volunteered to separate the dogs. When Ervin entered the ring, the dogs were not hostile towards him. Officer Barker testified that Ervin used a break stick, which requires skill and practice, to end the fight.

Roberts's testimony was crucial in determining this case. It is the trial court's function to assess the witness's credibility, and we have relied upon the trial court's assessment regarding Roberts. The officers' testimony was consistent with Roberts's, which bolstered his credibility.

---

[2] Ervin admitted to Count VI, attendance at an animal fighting contest, at trial, which requires that he knowingly and intentionally attended a dog fight. See Tr. p. 424.

6

**Conclusion**

There is sufficient evidence to support Ervin's conviction for attendance at an animal fighting contest with an animal as a Class D felony. We affirm.[3]

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.

---

[3] As the State noted, Ervin also challenges the trial court's convictions on Count I, purchase or possession of animal for fighting, but the trial court merged Counts I and VI into Count II at the sentencing hearing. The trial court only entered judgment against and sentenced Ervin for Count II, and we will not address Count I.