## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 04 2015, 9:06 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kraig Martin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 4, 2015

Court of Appeals Cause No.
49A04-1409-CR-434

Appeal from the Marion Superior Court
Cause No. 49F15-1301-FD-3980

The Honorable John Chavis, Judge
The Honorable Hugh Patrick Murphy, Magistrate

**Barnes, Judge.**

# Case Summary

[1] Kraig Martin appeals the revocation of his probation and his placement in community corrections. We affirm in part and reverse in part.

# Issues

[2] Martin raises two issues, which we restate as:

> I.    whether there is sufficient evidence to support the revocation of his probation and placement in community corrections; and
>
> II.   whether the trial court properly ordered him to pay $660 in fees following the revocation of his probation.

# Facts

[3] On April 15, 2014, Martin pled guilty to one count of Class D felony theft and one count of Class B misdemeanor unlawful entry of a motor vehicle. Martin received a total sentence of 730 days, with 365 days executed and 365 days suspended to probation. The executed portion of Martin's sentence was to be served through Marion County Community Corrections ("MCCC") on home detention. On July 2, 2014, the trial court found Martin violated conditions of home detention and ordered him to serve the remainder of his executed sentence through work release at the Duvall Residential Center ("DRC").

[4] On August 6, 2014, MCCC filed a petition alleging Martin had violated DRC rules by "engaging in trafficking"; by possessing "an electronic device"; by using or possessing "a controlled substance"; by "refusing a mandatory

program"; and by failing "to comply with his monetary obligation." App. p. 34. The petition further stated:

> On 7/7/14, the defendant received a disciplinary conduct report for trafficking, for attempting to bring in 25 grams of loose tobacco with 7 cigarette rolling papers to DRC. On 7/7/14, the defendant received a disciplinary conduct report for possession of an electronic device.
>
> On 7/23/14, the defendant received a disciplinary conduct report for possession or use of a controlled substance. The report indicated that there was a syringe found under the defendant's bunk mattress. On 7/23/14, the defendant received a disciplinary conduct report for refusing a mandatory program. A violation is being filed in lieu of a disciplinary hearing to address the disciplinary conduct reports.
>
> As of 8/6/14, the defendant has paid $38.00 toward his Work Release fees and is currently $214.50 in arrears to Marion County Community Corrections. The defendant is currently unemployed.

*Id.* at 34-35. On August 12, 2014, the State also filed a petition to revoke Martin's probation based on his violation of MCCC/DRC rules.

[5] The trial court held a joint hearing on both petitions. The State presented only one witness, William Beck, who is a "Court Team Liaison" working for MCCC. Tr. p. 4. Beck did not know Martin personally and had no personal knowledge of any of the alleged violations against Martin. During his testimony, Beck read from Martin's MCCC file regarding the alleged violations, which had been prepared by another MCCC employee. The testimony tracked almost verbatim the language of the petition quoted above. Beck was unable to provide further detail regarding the alleged violations on cross-examination. He could not say whether any controlled substance was found in the syringe allegedly found under Martin's bed. It also was revealed that after the filing of

the notice of violation, Martin completed the mandatory program he was alleged not to have completed.

[6] During cross-examination, Beck indicated that he had no knowledge of what kind of electronic device Martin was alleged to have possessed in violation of DRC rules. At that time, Martin introduced an email between his attorney and the DRC employee who had confiscated a cell phone from Martin, Michael Nesbitt.[1] The attorney had written, "It's my understanding that Mr. Martin gave you his cell phone upon his return from a job search pass, but after checking, you realized that he was not allowed to have a phone before securing employment and remaining at that employment for a certain amount of time." Ex. A. Nesbitt responded, "That is correct after checking to see if Resident Martin was approved it came to my knowledge that Resident Martin was in fact not authorized to have such a [sic] electronic device . . . ." *Id.* During his testimony, Martin attempted to explain that he thought he was allowed to have a cell phone when he went outside DRC and had to put it in a locker when he returned to the facility, but he did not realize he was absolutely prohibited from having one.

[7] At the conclusion of this hearing, the State said,

> As to the cell phone, um—if the Court finds it persuasive that…in the e-mail, that he was given the cell phone by someone else, and that—that was the Defendant's testimony—then the State would have to

---

[1] Martin's attorney had written the email in lieu of subpoenaing Nesbitt to testify at the revocation hearing.

withdraw that violation. Um—especially if he was just coming in to Duvall, and was then giving that cell phone back for the lockers, and that the violation wasn't for "inside" the actual center itself.

Tr. p. 39.

[8] The trial court then stated,

I find by a preponderance of the evidence that he did have tobacco, which is prohibited under personal property allowed. It says that explicitly in the rules. Rolling papers and syringe are paraphernalia—those are prohibited too. Even though the—they're withdrawing the electronic device, the Exhibit A says that Nesbitt determined that he had no permission to have the device. So that fairly speaks to its—for itself too, I think.

*Id.* at 42. The trial court made no finding with respect to the allegations that Martin had failed to complete a mandatory program or failed to pay fees. The trial court then revoked both Martin's placement in DRC and his probation and required him to serve the remainder of his suspended sentence. It also stated, in response to a question regarding fees, that Martin was "[i]ndigent—unless there's a restitution claim," which there was not. Tr. p. 43. The trial court did not state that it would require Martin to pay any fees. In a subsequent written order, however, the trial court ordered Martin to pay $660 in fees. Martin now appeals.

## *Analysis*

### *I. Sufficiency of the Evidence*

[9] Martin is challenging both the revocation of his placement in MCCC and his probation. "For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a

hearing on a petition to revoke probation." *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999). "Both probation and community corrections programs serve as alternatives to commitment to the Department of Correction and both are made at the sole discretion of the trial court." *Id.* Placement in either a community corrections program or on probation is not a right and is a "matter of grace" and a "conditional liberty that is a favor . . . ." *Id.* As a matter of due process, a defendant facing revocation of either a community corrections placement or probation "is entitled to representation by counsel, written notice of the claimed violations, disclosure of the opposing evidence, an opportunity to be heard and present evidence, and the right to confront and cross-examine witnesses in a neutral hearing before the trial court." *Id.* at 550.

[10] Before addressing the sufficiency of the evidence to revoke Martin's community corrections placement and his probation, we note his argument that the State failed to provide adequate notice of the allegations against him. Specifically, he observes that although he was alleged to have committed "trafficking" in tobacco, it failed to present any evidence that he trafficked in tobacco as defined in the DRC rule book as opposed to merely possessing it.[2] The trial court also did not find that Martin trafficked in tobacco as opposed to merely possessing it. Additionally, Martin notes that he was alleged to have possessed a

---

[2] The DRC rule book defined "trafficking" as having the same definition as the crime of prison trafficking now found in Indiana Code Section 35-44.1-3-5, which requires intent to deliver contraband to an inmate. There was no evidence of whether Martin intended to deliver any tobacco to any other person as opposed to keeping the tobacco for personal use.

controlled substance but the State only presented evidence and the trial court only found that he possessed a syringe—i.e., paraphernalia—but he was not alleged to have possessed paraphernalia, which is a separate violation according to the DRC rule book.

[11] The written notice of an alleged community corrections or probation violation must be detailed enough to allow the defendant to adequately prepare a defense to the charge. *Long v. State*, 717 N.E.2d 1238, 1240 (Ind. Ct. App. 1999). Community corrections or probation "may not be revoked based upon proof of an act that is merely similar in nature to the violation charged in the written notice." *Id.* In *Long*, a probationer was alleged to have "tampered" with his ankle transmitter by attempting to remove it, but at the revocation hearing the State only presented sufficient evidence that he had attempted to "fix" his transmitter after he had broken it after falling on it. *Id.* Regardless, the trial court found that there was a separate home detention/probation rule that prohibited probationers from attempting to fix an ankle transmitter and revoked probation on that basis. On appeal we reversed, holding that probation could not be revoked based upon an act that was similar but not identical to the charged act. *Id.* at 1241 (citing *Harder v. State*, 501 N.E.2d 1117, 1121 (Ind. Ct. App. 1986) (reversing revocation of probation where defendant was alleged to have operated a vehicle with BAC of .10 or greater but State only proved defendant had operated a vehicle while impaired)). Based upon the holdings in *Long* and *Harder*, we cannot say it was appropriate to revoke Martin's probation

and DRC placement based upon evidence that he merely possessed tobacco and a syringe when he was not charged with possessing tobacco or paraphernalia.

[12] This leaves the only remaining allegation that the trial court found to be proven, Martin's possession of a cell phone. Martin contends there was insufficient evidence that he possessed one in violation of DRC rules, and notes the State's comment in closing argument that "if the Court finds it persuasive that . . . in the e-mail, that he was given the cell phone by someone else, and that—that was the Defendant's testimony—then the State would have to withdraw that violation." Tr. p. 39.

[13] The State must prove a violation of community corrections rules or probation by a preponderance of the evidence. *See Heaton v. State*, 984 N.E.2d 614, 617 (Ind. 2013). When reviewing the sufficiency of the evidence to support revocation of a community corrections placement or probation, we consider only the evidence most favorable to the trial court's decision without reweighing evidence or judging witness credibility. *Figures v. State*, 920 N.E.2d 267, 272 (Ind. Ct. App. 2010). We will affirm if there is substantial evidence of probative value to support the conclusion that a defendant has violated any terms of community corrections placement or probation. *Id.* Even if a trial court has made erroneous findings with respect to some alleged violations, proof of any one violation of community corrections rules or probation is sufficient on appeal to affirm revocation. *Id.* at 273.

[14]     In part, Martin challenges the probative value of Heck's testimony, given that he had no personal knowledge of Martin or his alleged possession of a cell phone; indeed, Heck did not even know what type of electronic device Martin was alleged to have possessed. Heck merely was reading notes placed in Martin's file by an employee at DRC, who in turn may or may not have had any personal knowledge of whether Martin possessed a cell phone. To the extent Heck was relating hearsay, or even hearsay of possibly double or triple layers, Martin did not object to Heck's testimony on that or any other basis. Although not all hearsay is necessarily admissible in probation revocation hearings, a defendant must object to such evidence in order to preserve the issue for appeal. *Marsh v. State*, 818 N.E.2d 143, 145 (Ind. Ct. App. 2004). Because Martin did not object to Heck's testimony, it was properly before the trial court for its consideration.

[15]     In any event, the more definitive evidence regarding Martin's possession of a cell phone was the exhibit introduced by Martin relating the email exchange between his attorney and Nesbitt. Nesbitt clearly stated in the email that Martin was not authorized to possess a cell phone, that he confiscated the phone after learning that information, that he then asked Martin if he was aware of the DRC rules regarding cell phones, and Martin responded with an obscenity. Martin claimed during his testimony that he thought he was allowed to have a cell phone outside of the DRC premises. However, the DRC rule book clearly lists "cell phones" as a "strictly prohibited" item. Ex. B. p. 17. It also states that "unauthorized" possession of a cell phone is a Class B rule

violation. *Id.* Viewed in a light most favorable to the trial court's ruling, this evidence establishes that Martin violated DRC rules by possessing a cell phone without authorization.

[16] We also do not believe the State unequivocally withdrew the allegation regarding the cell phone. Rather, it offered to withdraw the allegation *"if* the Court finds it persuasive . . . that he was given the cell phone by someone else . . . ." Tr. p. 39 (emphasis added). The trial court evidently did not find Martin's attempted explanation for his possession of the cell phone to be persuasive, and it was not required to do so. That being the case, the trial court was not barred from revoking Martin's placement in DRC and his probation on the basis of his unauthorized possession of a cell phone.

## II. Imposition of Fees

[17] Martin also contends that even if his DRC placement and probation were properly revoked, the trial court erred in imposing fees of $660 against him in its written probation revocation order. He notes that at the end of the revocation hearing, a representative of the State asked, "Your Honor, in regards to fees? Did you want those waived also?" Tr. p. 43. The trial court responded, "Indigent—unless there's a restitution claim." *Id.* There was no restitution claim. The $660 in fees was made up of $100 for public defender costs and $560 in probation fees.

[18] With respect to the public defender fee, there was no authority for the trial court to impose such a fee after finding Martin to be indigent. *See Banks v. State*, 847

N.E.2d 1050, 1052 (Ind. Ct. App. 2006), *trans. denied*. We reverse that portion of the fee order.

[19] However, despite the finding of indigency, there was no absolute prohibition against the trial court ordering Martin to pay the probation fees. An indigent defendant is not shielded from all costs or fees related to a conviction. *Berry v. State*, 950 N.E.2d 798, 799 (Ind. Ct. App. 2011); *see also Banks*, 847 N.E.2d at 1052 (reversing imposition of public defender fee upon indigent defendant but not other court costs controlled by different statutes). Indiana Code Section 33-37-2-3 requires a trial court to hold an indigency hearing before imposing costs on a criminal defendant, but it does not bar the imposition of costs if a defendant is indigent; it simply bars the imprisonment of the person for failure to pay costs.[3] *Whedon v. State*, 765 N.E.2d 1276, 1279 (Ind. 2002). The trial court's written order did not specify that Martin could not be imprisoned for failing to pay the costs, but it did not have to do so. *See id.* Thus, we affirm the trial court's imposition of $560 in probation costs against Martin, with the understanding that he cannot be imprisoned should he fail to pay those costs.

---

[3] We recently held that a trial court may, within its discretion, delay holding an indigency hearing regarding payment of probation fees until a defendant completes his or her sentence. *Johnson v. State*, -- N.E.3d --, No. 49A02-1406-CR-437 ¶ 4 (Ind. Ct. App. Mar. 6, 2015). The trial court here instead made a determination of indigency at the revocation hearing.

# Conclusion

There was sufficient evidence to revoke Martin's probation and his placement in community corrections based on the allegation that he possessed an electronic device in violation of DRC rules. We reverse the imposition of the $100 public defender fee against Martin but affirm the remaining $560 in fees.

Affirmed in part and reversed in part.

Bailey, J., concurs.

Riley, J., concurs and dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kraig Martin,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | Court of Appeals Cause No.<br>49A04-1409-CR-434 |

**Riley, Judge concurring in part and dissenting in part**

While I concur with the majority's conclusion on the adequacy of the State's notice of Martin's charges, I respectfully dissent from its finding that the State presented sufficient evidence to sustain Martin's possession of a cellphone in violation of DRC rules. As pointed out by the majority, the only evidence presented by the State was the testimony of Heck, who did not have personal knowledge of the type of electronic device or whether Martin was even allowed to possess a cell phone. In turn, Martin testified that an officer handed him his

cell phone when he left for an authorized job search outing and the officer did not inform him that he was not allowed to possess a cell phone in the facility. When Martin returned from his employment search several hours later, he handed the phone back to the officer when entering the building. DRC employee Nesbitt corroborates Martin's testimony in part. Even the State appears to acknowledge the weakness of its own charge when it admitted the possible credibility of Martin's testimony "especially if [Martin] was just coming in to Duvall, and was then giving that cell phone back for the lockers, and that the violation wasn't for 'inside' the actual center itself." (Transcript p. 39). I conclude that there is no substantial evidence of probative value that Martin possessed a cell phone without authorization.

Furthermore, in so far the majority affirmed the trial court's imposition of probation fees, I dissent. At the conclusion of the revocation hearing, the trial court was specifically asked whether it wanted the "fees" "waived." (Tr. p. 43). The trial court responded "Indigent – unless there's a restitution claim." (Tr. p. 43). As no restitution was claimed, the record established that Martin was found indigent for purposes of fees. Despite this finding, the trial court's written sentencing order imposes a monetary obligation for probation fees. When oral and written sentencing statements conflict, we examine the two statements together to discern the intent of the sentencing court. *Walker v. State*, 932 N.E.2d 733, 738 (Ind. Ct. App. 2010). As I conclude that the trial court specifically and unambiguously waived the probation fees, I would remand for a correction of this clerical error. *See id*.